## KISCIRAS, ET AL. v. MERRITT
(No. 1684; September 21, 1931; 3 Pac. (2d) 98)

For appellant there was a brief by *Walter Q. Phelan,* of Cheyenne, Wyoming, and an oral argument by *Mr. Phelan.*

For the respondent there was a brief by *Edward T. Lazear* and *Thomas Hunter*, of Cheyenne, Wyoming, and oral argument by *Mr. Lazear*.

KIMBALL, Chief Justice.

The plaintiffs sued to recover from defendant damages alleged to have been caused by the presence of defendant's cattle and horses on lands of plaintiffs between June 1 and November 1, 1929. The case was tried without a jury, and the court, on defendant's motion at the conclusion of plaintiffs' evidence in chief, gave judgment for defendant. The plaintiffs appeal.

The allegations of the petition are substantially these: Plaintiffs at all times mentioned were "the owners of and possessed of a legal estate in, and were entitled to use and occupy" some 15 sections of land in township 15, range 68. It is charged that, from June 1 to November 1, 1929, defendant did knowingly, willingly and deliberately deprive the plaintiffs of the use and occupation of said premises,

and did appropriate to his own use the valuable grasses and herbage thereon; knowingly, intentionally and deliberately and "against the will and express request of plaintiffs," and with the deliberate intention to appropriate to himself the use and occupation of said premises, and to obtain for his own cattle and other livestock the benefit of pasturage on said premises, "permitted and allowed and caused" cattle and other livestock "to enter into and upon and over" the plaintiffs' premises; and that the said livestock were by defendant knowingly, intentionally and deliberately placed upon plaintiffs' premises. It is alleged that the said livestock consumed grasses and herbage growing upon said lands, "and did thereby deprive the plaintiffs of the use and benefit of the same of the value of $1800." Damages in that sum were claimed as the reasonable and fair value of the grasses and herbage consumed, "and the use and occupation of the lands."

The answer in effect was a general denial.

We state briefly the facts that seem material in disposing of the questions raised on the appeal. Of the lands described in the petition, plaintiffs at all times had title to at least 11 sections. About July 1, they acquired by transfer from defendant 3 other sections. These 14 sections with other lands belonging to various owners made up a large tract in which, so far as the evidence discloses, there were no fences separating plaintiffs' lands from the lands of others. There is no contention that the tract itself was enclosed by a lawful fence as defined by statute. It was not enclosed in any manner, but to some extent was protected by fences of adjoining lands on the north, west and south. These fences were broken by unfenced public roads that afforded a means by which cattle from neighboring fields could enter upon the tract. East of the tract there were no fences. Within this tract defendant had the right to possession and use of 3 sections, or 1920 acres, until July 1, when they were transferred to plaintiffs, as mentioned above. These lands were in five pieces: all of sections 18

and 36, and fractions of sections 20, 22 and 35. Each piece touches on one or more sides other lands described in the petition. The defendant also owned or held under leases some 7000 acres of other land, most of which, we understand, was west and north of the lands heretofore mentioned.

Plaintiffs apparently had no livestock, and held their lands for rental purposes. Defendant was pasturing during the time in question about 350 head of cattle and 40 head of horses of his own. In May he took for pasturage 293 cattle belonging to Charles Farthing. In July he took 52 more Farthing cattle. On taking possession of the 293 Farthing cattle in May, defendant moved them, with 72 head of his own, to section 36, before mentioned, which, with four other pieces of land in the same township, defendant then had the right to use. The cattle wandered from the lands on which they were put, and on June 2, the plaintiffs saw many of the cattle on their lands, and made protest to the defendant.

About July 1, when, as above mentioned, defendant transferred to plaintiffs his interest in the five parcels of land, plaintiffs leased to defendant six sections lying west and south of the lands described in the petition. Defendant thereupon moved the Farthing cattle and 72 of his own to a pasture which contained four sections, or 2560 acres, called by the witnesses the "4-section pasture." This pasture included section 30 which on its north and east sides touches two sections of plaintiffs' lands described in the petition. From July 1 to November 1, the 4-section pasture was used for grazing purposes for defendant's 72 cattle and 40 horses and all of Farthing's cattle which, after the addition of the 52 head received some time in July, amounted to 345 head. Other cattle belonging to defendant were not put in the 4-section pasture, but were pastured on defendant's other lands.

There was testimony that, on at least five days between July 1 and November 1, numbers of the cattle and horses

in defendant's charge were seen grazing on plaintiffs' lands. There is no contention that they were driven or herded there, and they probably wandered there of their own accord as they could readily do by following roads leading from the pasture to the open lands of which plaintiffs' lands were a part. Cattle and horses belonging to other ranchers were also frequently seen on plaintiffs' lands. Other facts shown by the evidence may be mentioned later.

Plaintiffs' admissions and contentions in this court require some consideration of the nature of their action. They say they have not sued in trespass, and that this is shown by the failure of the petition to allege that plaintiffs were in possession of the lands and that defendant trespassed thereon. The petition, while not alleging that plaintiffs were in actual possession of the lands, does allege that they were the owners and entitled to possession, and would seem to be sufficient to show constructive possession. A plaintiff not in actual possession may recover in trespass by showing title sufficient to give him constructive possession of the land. Noble & Carmody v. Hudson, 20 Wyo. 227, 236, 122 Pac. 901. Possession is implied from an allegation of title. 38 Cyc. 1081; 3 Bates New Pl. & Pr. 2866. It cannot seriously be contended that the petition, containing among other allegations the statement that defendant knowingly and deliberately and against the will and request of plaintiffs "placed" his livestock on plaintiffs' lands, failed to charge a trespass.

Plaintiffs not only say they have not sued in trespass, but admit, as stated in their brief, "that under facts and conditions such as disclosed by the case at bar, the plaintiffs cannot recover for damages in trespass." This admission is made because of the rule laid down in Haskins v. Andrews, 12 Wyo. 458, 76 Pac. 588, and many other cases, that a trespass by cattle on unenclosed lands, to be actionable, must be the result of some willful and intentional act of the defendant. We have not made our statement of facts as full as would have seemed necessary if

plaintiffs were contending that their evidence proved an actionable trespass. We have undertaken to state only those facts that appear to be material in deciding whether plaintiffs made out a case on the theory they now advance.

The appeal might be shortly disposed of by saying that, if plaintiffs failed to prove an actionable trespass, but proved only the grazing of their lands by wandering or straying cattle, as seems to be admitted, they could not recover on any theory. If the trespass had been willful, and therefore actionable, plaintiffs, under some of the authorities, would have had the right to waive the tort and sue on an implied contract. See, Norden v. Jones, 33 Wis. 600; De La Guerra v. Newhall, 55 Calif. 21; Dorman v. Erie, 63 Mont. 579, 208 Pac. 908; Tsuboi v. Cohn, 40 Ida. 102, 231 Pac. 708, 39 A. L. R. 851. But if there is no tort there is nothing to waive. An actionable trespass must be alleged and proved in order to show the facts from which the promise is implied. Holmes v. Williams, 16 Minn. 164, 171 (Gil. 146); Spoor v. Newell, 3 Hill 307; Horine v. Bone, 69 Mo. App. 471. The rule excusing trespasses by straying cattle would mean little if it could be avoided by suing on contract.

The plaintiffs contend that their action is one for use and occupation, and that they made out a case under the law as laid down in Lazarus v. Phelps, 152 U. S. 81, 14 S. Ct. 477, 38 L. Ed. 363, and the interpretation of that case in our own case of Haskins v. Andrews, supra. Haskins v. Andrews was an action for trespass, and contains dictum that leads the plaintiffs in the present case to suppose that, while they could not recover damages in an action for trespass, they can recover the equivalent thereof in an action for use and occupation.

It is generally held that the action for use and occupation cannot be maintained except where the defendant had possession of the lands as tenant, or with permission of the owner, and there was an express or implied contract to pay rent or the value of the use and occupation. See, 2 Bates

New Pl. & Pr. p. 1993; 5 Bancroft Code Pl. § 2418; Atlanta, K. & N. Ry. Co. v. McHan, 110 Ga. 543, 35 S. E. 634.

We shall assume, without deciding, that the petition in the case at bar states a cause of action for use and occupation. In Lazarus v. Phelps, supra, it was held that a plaintiff could sue for use and occupation and recover the rental value of lands of which defendant had taken exclusive possession for grazing purposes. In that case lands of defendant and plaintiff were enclosed together in a large field. The defendant was in exclusive possession of the fields (see Lazarus v. Phelps, 156 U. S. 202, 15 S. Ct. 271, 39 L. Ed. 397), which he overstocked and thus availed himself of the pasturage of plaintiff's as well as his own lands.

There can be no doubt of the correctness of the result in that case, and the decision was approved, at least by dictum, in Haskins v. Andrews, supra, at p. 472 of 12 Wyo., 76 Pac. 588, 590, where it was said:

"So where the cattle owner takes and holds exclusive possession of the unfenced lands of another situated in the same general enclosure with his own land, and by depasturing the same with his cattle appropriates to himself the benefits thereof, he will be liable for the value of the use and occupation of the premises."

Plaintiffs, however, cannot recover on this principle, as their evidence fell far short of showing defendant's exclusive possession either of the whole tract described in the petition or of any particular part of it, or that the tract was enclosed. Defendant made no effort to exclude other cattle from the lands, and his possession was no different, except perhaps in degree, from that of the owners of other cattle that strayed upon the land. Besides, there was evidence showing that on August 20, 1929, plaintiffs leased and turned over to a sheep company for grazing purposes part of the lands mentioned in the petition.

Plaintiffs contend that there was evidence sufficient to prove that defendant overstocked his own land, particu-

larly the 4-section pasture, so as to force his cattle to go upon the lands of plaintiffs, and that this, with other evidence, was sufficient to prove that defendant took possession of their land. They rely upon a statement in Lazarus v. Phelps, supra, 152 U. S. at p. 85, 14 S. Ct. 477, 478, 38 L. Ed. 363, of a principle much broader than that applied to the facts by the decision. It is said that,—

"(If a cattle owner) lease a section of land, adjoining an unenclosed section of another, and stock his own section with a greater number of cattle than it could properly support, so that, in order to obtain the proper amount of grass, they would be forced to stray over upon the adjoining section, the duty to make compensation would be as plain as though the cattle had been driven there in the first instance."

In Haskins v. Andrews, supra, at p. 473 of 12 Wyo., 76 Pac. 588, the above dictum was referred to, but not approved. We did say, however, (p. 472 of 12 Wyo., 76 Pac. 588, 590), that in actions for use and occupation, where it is charged that the cattle owner took and held exclusive possession of unfenced lands of another situated in the same general enclosure, "evidence showing the extent to which the cattle owner has stocked the pasture, or even his own lands, may doubtless be competent as tending to prove either the taking of possession or the contrary."

In the case at bar there was some evidence showing the extent to which defendant stocked his lands. Mr. Farthing, the owner of the cattle that defendant was pasturing with some of his own, testified that a section of land was sufficient pasture for 50 grown cattle or horses for the grazing season. We can find no testimony in regard to the amount of pasture required for young stock, although it was proved that of the 365 cattle placed on section 36 in May and put in the 4-section pasture in July, 240 were yearlings and 93 two-year-olds. We are not informed as to the length of the grazing season, except by testimony of Mr. Farthing that

the time the cattle were in the 4-section pasture—July 1 to November 1—was half the season. The 4-section pasture was stocked with only 124 head of grown cattle and horses and 333 head of young cattle. Three of the five days when the cattle were seen on plaintiffs' land were in the month of July, and on those days, even if defendant's pasture had been slightly overstocked, there must have been sufficient feed remaining there. It is to be gathered from the testimony of Mr.. Farthing that he was satisfied there was sufficient feed for his cattle in the 4-section pasture for the time they were there. It is hardly to be contended that there was any substantial evidence to prove that defendant overstocked any of his lands before July 1, when, for a month and a half he had 365 cattle on the open range where there were 1920 acres of land which he had the right to use.

We doubt that there was any substantial evidence to prove that defendant overstocked his lands. If it be conceded that some overstocking was proved, it was too insignificant to warrant the inference that defendant thereby took possession of plaintiffs' lands by forcing or causing his cattle to go there for feed.

The judgment will be affirmed.

BLUME and RINER, JJ., concur.